We hereby certify that this is a true & correct copy of the original instrument.
LAWYERS TITLE
By: [signature]

Loan No.: ▓▓▓▓

# NOTE

July 30, 2004                                          The Woodlands, Texas

3903 Green Jade Court
Spring, TX 77386
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $257,793.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Bank of America, N.A.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on June 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at

Bank of America, N.A.
P.O. Box 9001092
Louisville, KY 40290

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,629.43.

4. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Loan No.:

6. BORROWER'S FAILURE TO PAY AS REQUIRED
   (A) Late Charge for Overdue Payments
   If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B) Default
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) Notice of Default
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   (D) No Waiver By Note Holder
   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) Payment of Note Holder's Costs and Expenses
   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES
   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS
   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE
    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mac/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01(Page 2 of 3 Pages)
(R&A) 6294507 - nt5r.bax - Rev. 08/10/2000

Loan No.: ████

expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____*Edward Longoria* (signature)_____(Seal)
Edward Longoria                                    Borrower

Social Security Number
████████████

_____(Seal)
                                                    Borrower

Social Security Number

_____(Seal)
                                                    Borrower
Social Security Number

_____(Seal)
                                                    Borrower
Social Security Number

[Sign Original Only]

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01(Page 3 of 3 Pages)
(R&A) 6294507 - nt5r.bax - Rev. 08/10/2000

Loan No.: ▮

# CONSTRUCTION LOAN ADDENDUM TO NOTE

THIS CONSTRUCTION LOAN ADDENDUM ("Addendum") is made this thirtieth day of July, 2004 and is incorporated into and shall be deemed to amend and supplement the Note (the "Note") of the same date given by the undersigned (the "Borrower") to Bank of America, N.A. (the "Lender") in the amount of **$257,793.00** Dollars.

Terms defined in the Note shall have the same meaning in this Addendum.

In addition to the covenants and agreements made in the Note, Borrower and Lender agree as follows:

As a benefit to the Borrower, this Note is for a combined construction and permanent loan. This Note shall be entitled to the benefits of the terms and conditions of the Residential Construction Loan Agreement of even date herewith (the "Loan Agreement"), which Agreement provides for periodic advances of the principal amount of the Note for the purpose of constructing or renovating a residence on the real property securing the Note. Borrower acknowledges that during this construction phase, Borrower will have an Adjustable Interest Rate as defined below. Borrower also acknowledges there is a prepayment penalty associated with the loan during this phase.

A.  **INTEREST RATE DURING CONSTRUCTION LOAN PHASE.** The term "Construction Loan Phase" as used herein shall mean the time period beginning with the initial advance of loan proceeds whether at loan closing or later and ending on ___May 1, 2005___ (the "Rollover Date".) Notwithstanding the provisions of the Note Borrower shall make monthly payments of interest only, as billed by Lender. The interest on the sums disbursed and outstanding from time to time, during the Construction Loan Phase shall accrue at the rate stated below:

    At a varying rate per annum (the "Rate") equal to ___One & one-half (1.5%)___ percent plus the Prime Commercial Lending Rate (the "Index") as such rate exists daily (the "Applicable Rate"). Interest shall be calculated daily on the outstanding principal balance and the interest rate shall change as and when said Prime Commercial Lending Rate changes. The interest rate shall not exceed an annualized rate of eighteen percent (18%) or applicable usury ceiling, whichever is lower.

    The Index shall mean the base interest rate on corporate loans posted by at least 75% of the thirty largest U.S. Banks as reported daily in The Wall Street Journal, New York edition and is not the best index or rate Lender uses to make loans.

    Notwithstanding the foregoing, if such base interest rate ceases to be announced or published by The Wall Street Journal, then, in such event, Lender shall select an alternate but similar index and advise Borrower in writing of such selection.

    To the extent that Texas Finance Code Sections 303.002 and 303.003, as amended, is applicable to the Loan, the Indicated Rate Ceiling specified in such article is the applicable ceiling in determining the Maximum Rate on this Note; provided however, that if any applicable law permits a greater rate of interest, the law permitting the greatest rate of interest shall apply.

    During the Construction Loan Phase interest shall accrue and be calculated on a 365 day annual basis by computing a daily amount of interest for a 365 day year and multiplying that amount by the number of days in each interest calculation period.

    All interest accrued during the Construction Loan Phase shall be due and payable in full on the Rollover Date.

B.  [ X ] **CONSTRUCTION LOAN PHASE PREPAYMENT.** You have the right to make nonscheduled payments of principal at any time before they are due. This payment of principal is known as a "prepayment." A prepayment of the entire unpaid principal is known as a "full payment." Any amount prepaid that is less than the entire unpaid principal is known as a "partial prepayment." Any amount of the loan proceeds not disbursed as agreed is known as "underdisbursement." During the Construction Loan Phase and prior to the Rollover Date, you may prepay up to 40% of the original principal amount of the loan without a prepayment charge. If you prepay an amount in excess of 40%, you will be required to pay a fee equal to 2% of the original principal amount of the loan. In addition, if the total loan proceeds disbursed during the Construction Loan Phase is less than 60% of the original face amount of the Note,

Loan No.: ▮

you will be required to pay a prepayment fee equal to 2% of the original face amount of the Loan. The 2% fee shall also be payable if by the combination of a partial prepayment and underdisbursement of loan proceeds, the principal balance at Rollover Date is less than 60% of the original face amount of the Note.

C. **WAIVERS BY BORROWER.** To the extent allowed by law and notwithstanding any other provision in the Note, the Security Instrument of even date and the Residential Construction Loan Agreement (the "Loan Documents") to the contrary, Borrower and any other person who has obligations under the Note, jointly and severally waive notice of default and presentment, notice of dishonor, and notice of intention to accelerate the maturity of the Note, and notice of acceleration of the Note; further, Borrower and all Guarantors, if any, agree to all extensions of time for payment under the Note, renewals of the Note including changing the terms thereof, acceptance by the Lender of partial payments on the Note, and releases of liability as to certain parties obligated under the Loan Documents, and partial or full releases of property securing said Note.

D. **LENDER'S REMEDIES UPON DEFAULT.**

1. Acceleration of Maturity of Note. Upon any monetary or non-monetary default by Borrower of any provision of the Loan Documents, Lender may declare the unpaid principal of the Note and all accrued interest thereon immediately due and payable. Lender's right to accelerate the maturity of the Note as to any subsequent default shall not be impaired or waived by any election by Lender not to exercise it upon a default by Borrower.
2. Right of Offset. Upon any monetary default by Borrower, Lender shall have in addition to all other remedies the remedy of offset to the extent of monies owed to Borrower or Guarantors, if any, herein as against Lender's obligations to such Borrower or Guarantors.

E. **PERMANENT PHASE INTEREST RATE.** Borrower's permanent phase interest rate effective on Rollover Date will be as stated or determined below:

1. [N/A] Notwithstanding the rate of interest stated in Section 2 of the Note, (the "Face Rate"), if on the date 45 days prior to the Construction Completion Date the prevailing market rate of interest offered by Lender for 60-day lock-ins for the loan type with terms comparable to those contained in the Note (the "Market Rate") taking any and all previously paid fees and/or discount points into account, is less than the Face Rate, then the Note will be modified to the lower Market Rate. Any such change in the interest rate shall be evidenced by written modification agreement between Borrower and Lender and such agreement (if applicable) shall also reflect changes to other Note terms as required; or

2. [X] The Note rate shall be the Face Rate as stated and/or calculated therein.

F. **OPTION TO MODIFY ADJUSTABLE RATE NOTE TO FIXED RATE TERMS DURING CONSTRUCTION LOAN PHASE.**

[N/A] If checked, Borrower shall have the right to modify the Permanent Phase of the loan from one with an adjustable rate of interest as set forth in the Note to one with a fixed rate of interest equal to the interest rate Lender is offering for 60 day lock-ins for mortgage loans with comparable terms, 45 days prior to the Construction Completion Date taking into account any and all previously paid fees and/or discount points, provided such rate is equal to or less than the Face Rate, and provided the following conditions are adhered to:

1. Borrower must not be in default under the Note, the Security Instrument or the Residential Construction Loan Agreement.
2. Borrower pays a non-refundable $250.00 rollover modification option fee at closing.
3. The loan term for the Permanent Loan Phase must remain the same.
4. The improvements to the subject property must be completed by the original Construction Completion Date **April 30, 2005.**
5. In the event there is no comparable rate for the loan discount paid at closing, when it is time to determine the fixed rate of interest for the Permanent Loan Phase of your Loan you will receive the next highest rate with a curtailment to the principal balance for the unused discount points paid, if any. You may not buy down the rate any further.

Loan No.: ███

The Modification Agreement prepared for execution by Borrower and Lender will specify the new monthly payment amount of principal and interest necessary to amortize the loan to date of maturity. The new monthly payment will be first due on the first day of the second month after the date of modification.

G. **LATE OR EARLY COMPLETION OF CONSTRUCTION.** The Construction Completion Date is April 30, 2005.

1. **Late Completion.** Failure to complete construction of the Residence as described in the Residential Construction Loan Agreement by the Construction Completion Date April 30, 2005 shall constitute an event of default hereunder, under the Security Instrument and under the Loan Agreement. Provided, however, so long as there exists no other event of default and on a one time basis only, Lender in its sole discretion may elect to extend the Construction Completion Date and Rollover Date one or more periods of 30 days each up to a maximum of 120 days to facilitate the completion of construction. In the event Lender makes such election to extend, Borrower shall be required to pay Lender an extension fee equal to the lesser of $500.00 or one quarter of one percent (.25%) of the original principal amount of the Note. Should Lender elect to extend the Construction Completion Date and Rollover Date, Borrower may pay a fee for interest rate protection commensurate with the time of extension granted prior to the expiration of the original Construction Completion Date equal to .50% of the original loan amount for the first 30 days of extension and .125% of the original loan amount for each 30 day period (as applicable) thereafter, up to a maximum of 120 days. Borrower's election to pay for extended rate protection must be exercised prior to the original Construction Completion Date, but no earlier than 45 days prior thereto. If Borrower elects not to pay for such rate protection the rate at which interest will accrue on the Note subsequent to the new Rollover Date shall be equal to the greater of the Face Rate or the rate established by Bank of America, N.A. as its 60 day rate offered fifteen (15) calendar days prior to the new Construction Completion Date, for mortgage loans with terms comparable to those contained in the Note taking any and all previously paid fees and/or discount points into account. Any change in the interest rate or other Note terms shall be evidenced by written modification agreement executed by Borrower and Lender, and such agreement (if applicable for the subject loan type) shall also reflect all terms relating to future interest rate changes.

Any amount of principal not advanced prior to the Rollover Date (whether extended or not) may, in the sole discretion of Lender, be funded into escrow with the closing title company on such Rollover Date, and advances may be made out of such escrow after the Rollover Date in accordance with terms approved by Lender. Alternatively, any funds not advanced under the Residential Construction Loan Agreement upon completion of the construction of the Residence prior to the Rollover Date (whether extended or not) may at Lender's option, be credited against the stated principal amount of the Note on such Rollover Date. Any portion of a payment received in excess of interest due during the Construction Loan Phase shall be applied to principal. This may result in a penalty as described in Section B above.

2. **Early Completion.** In the event the construction of the Residence as described in the Loan Agreement is completed more than thirty-one (31) days prior to the Construction Completion Date, upon Borrower's fifteen (15) days prior written request, Lender may, in its sole discretion, permit an earlier rollover of the loan from Construction Loan Phase to Permanent Loan Phase.

If Lender so consents Lender shall designate the new Rollover Date and beginning date for permanent monthly payments of principal and interest. The interest rate shall not change unless Section E.1. is designated, in which event the interest rate will be the lesser of (i) the prevailing Market Rate offered by Lender 15 days prior to the early Construction Completion Date, taking any and all previously paid fees and/or discount points paid into account or (ii) the Face Rate. Borrower shall be required to execute a modification agreement evidencing all required changes to the Note, including but not limited to changes in interest rate, first payment due date and amount of monthly principal and interest payment, as applicable.

H. **MODIFICATION DOCUMENTS.** Should the occurrence of any matters or contingencies addressed herein cause any terms of the Note to change, or necessitate the submission of new disclosures by Lender to Borrower, Borrower agrees to execute all documents Lender deems necessary and appropriate to properly evidence such changes and to confirm receipt of additional disclosures. Borrower's failure to execute such documents reflecting any such changes within the time frame specified by Lender shall constitute an event of default under the Note and Security Instrument.

I. **NOTICE.** Except as may be required by applicable law, Lender will not provide Borrower notice of interest rate changes during the Construction Loan Phase.

Loan No.: ▮

J.  **TRANSFER OF PROPERTY.** Any provision in the Note permitting the Borrower to transfer property that is security for the Note shall not be effective during the Construction Loan Phase. Unless prohibited by applicable law, any transfer of the property securing the Note during the Construction Loan Phase shall constitute a default.

K.  **LATE CHARGE INAPPLICABLE.** The Late Charge for Overdue Payments provision in the Note shall not be applicable during the Construction Loan Phase.

L.  **CONFLICTS.** If any term or provision of this Addendum shall be in conflict with any term or provision of the Note, the term or provision of this Addendum shall control.

M.  **TERMS.** Except as amended or supplemented hereby, the terms and provisions of the Note shall remain unchanged and in full force and effect.

Except as to the interest rate provisions set forth in sections E., F., G., and H., as applicable, of this Addendum, and so long as no event of default exists hereunder or under any instrument further evidencing or securing this Note, after the advance of all funds as necessary to complete the construction of the Residence as described in the Residential Construction Loan Agreement or the Rollover Date, whichever is later, this Addendum will be null and void and no longer in effect.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Construction Loan Addendum to Note.

_____ 7/30/04 _____
Edward Longoria                  Date                                      Date

_____         _____
                              Date                                      Date

DR Conroe
04070130

2005-093235

AFTER RECORDED RETURN TO:
Bank of America, N.A.
9000 Southside Blvd, Bldg 700 [CONSTRUCTION]
Jacksonville, FL 32256-0000
PARCEL NUMBER: _____
LOAN NUMBER: ███████

Prepared by:
Barbara Leuellen
Robertson & Anschutz, P.C.
10333 Richmond Avenue, Suite 550
Houston, TX 77042
713-871-9600

## NOTE AND SECURITY INSTRUMENT MODIFICATION AGREEMENT

| | | |
|---|---|---|
| The State of **Texas** | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| County of **Montgomery** | § | |

Recitals

This agreement ("Modification Agreement") is made on **June 1, 2005**, between **Edward Longoria and spouse, Antoinette Longoria**, (herein "Borrower") and Bank of America, N.A. (herein "Lender"), whose loan servicing address is **P.O. Box 9000, Getzville, NY 14068-9000**, for a Modification of that certain Deed of Trust, Mortgage or Security Deed (the "Security Instrument") and Note executed on **July 30, 2004**, in favor of **Bank of America, N.A.** and any previous modification(s) thereof, said Note being in the original principal amount of **$257,793.00**, said Security Instrument having been recorded in/under 2004-087153 of the Official Records of Real Property of **Montgomery** County, **Texas**, covering property described as follows:

SEE EXHIBIT 'A' LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART
HEREOF FOR ALL PURPOSES

WITNESSETH:
WHEREAS, Borrower now desires to modify the Note and ratify said liens against the Property; and

WHEREAS, Lender, the legal owner and holder of said Note and liens securing same, in consideration of the premises and at the request of the Borrower has agreed to modify the Note as hereinafter provided; and

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

WHEREAS, Borrower and Lender desire that the address on the Security Instrument and Note be modified to read as follows: **3903 Green Jade Drive, Spring, TX 77386** ; and

WHEREAS, Borrower and Lender desire that the Security Instrument and Note be modified as herein provided but that all terms not so modified remain unchanged and in full force and effect.

NOW, THEREFORE, in consideration of the foregoing, the parties hereto agree that the Note and Security Instrument are hereby modified as follows:

**The Note shall be and hereby is amended as follows:**

The principal amount evidenced by the Note is changed from **$257,793.00** to **$210,042.00**.
The beginning date for monthly payments of principal and interest set forth in paragraph 3 is changed from **June 1, 2005** to **July 1, 2005**.
The Maturity Date is changed from **May 1, 2035** to **June 1, 2035**.
The amount of the monthly payments of principal and interest set forth in paragraph 3, is changed from **$1,629.43** to **$1,327.61**.

**The Addendum or Rider to Note shall be and hereby is amended as follows:**

The principal amount evidenced by the Note is changed from **$257,793.00** to **$210,042.00**.
The "Rollover Date" as defined therein is changed from **May 1, 2005** to **June 1, 2005**.

**The Security Instrument shall be and hereby is amended as follows:**

Reference to the principal sum owed by Borrower to Lender is changed from **$257,793.00** to **$210,042.00**.
Reference to the maturity date of the debt secured by the Security Instrument is changed from **May 1, 2035** to **June 1, 2035**.

The address of the Property is modified to **3903 Green Jade Drive, Spring, TX 77386**.

Further, it is expressly agreed that for and in consideration of this Modification Agreement, Borrower hereby releases and forever discharges Lender and its officers, directors, counsel, employees, agents, predecessors, successors, and assigns from all causes of action, claims, rights, and controversies, known or unknown, which Borrower had, now has, or may hereafter acquire which relate to, are based on, arise out of, or are in any way connected with any acts of Lender or its above affiliates occurring prior to the execution of this Agreement and relating in any manner to the above described Note or Security Instrument or the Property described herein or therein. This is a general release of all possible claims and causes of action of every kind and character related to the above described subject matter and is to be interpreted liberally to effectuate maximum protection of Lender and its above affiliates.

The Borrower hereby ratifies said liens on the Property until the Note as so modified hereby has been fully paid, and agrees that this renewal, extension and/or modification shall in no manner affect or impair the Note or the liens securing same and that said liens shall not in any manner be waived, but are acknowledged by Borrower to be valid and subsisting, the purpose of this instrument being simply to modify the Security Instrument and the time and manner of payment of the Note and ratify all liens securing same, and the

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

Borrower further agrees that all terms and provisions of the Note, the Security Instrument and the other instruments creating or fixing the liens securing same shall be and remain in full force and effect as therein written except as otherwise expressly provided herein.

A breach or other default of any of the terms of this Agreement by Borrower shall constitute a breach or default under the Note and Security Instrument, and Lender shall thereupon have the right to seek all remedies available to it under the aforesaid loan instruments.

Borrower covenants and agrees that the rights and remedies of Lender under this Agreement are cumulative of, are not in lieu of but are in addition to, and their exercise or the failure to exercise them shall not constitute a waiver of, any other rights and remedies which Lender shall have under the Note or the Security Instrument.

It is agreed that time and the unimpaired security of Lender are of the essence of this Agreement.

Borrower covenants and agrees that this Agreement represents the final agreement between Borrower and Lender relating to the above described subject matter and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Borrower further covenants and agrees that there are no unwritten oral agreements between parties hereto relating to the above described subject matter.

As used herein "Lender" shall mean Bank of America, N.A. or any future holder, whether one or more, of the Note.

EXECUTED this the 22nd day of June, 2005 to be effective June 1, 2005.

_____  -Borrower   _____
Edward Longoria                         Antoinette Longoria

_____  -Borrower   _____  -Borrower

MINDY KAY MCGILVREY
Notary Public, State of Texas
My Commission Expires
August 02, 2006

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

**Individual Acknowledgment**

STATE OF TEXAS, ___Harris___ County ss:

This instrument was acknowledged before me on ___June 22___, ___2005___, by **Edward Longoria** and spouse, **Antoinette Longoria**.

> MINDY KAY MCGILVREY
> Notary Public, State of Texas
> My Commission Expires
> August 02, 2006

_____
Notary Public

Mindy Kay McGilvrey
Printed Name of Notary Public

ACCEPTED AND AGREED TO BY
THE OWNER AND HOLDER OF SAID NOTE:
Bank of America, N.A.

By:_____
Name:_____
Title:_____

**Corporate Acknowledgment**

State of _____
County of _____

The foregoing instrument was acknowledged before me this _____
by _____, _____ of _____
_____, on behalf of the said corporation.

Page 4                              (R&A) BAC6907 - modagrx.bar - Rev. 03/08/2005

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

My commission expires: 8/2/06

_____
Notary Public

MINDY KAY MCGILVREY
Notary Public, State of Texas
My Commission Expires
August 02, 2006

Harris County, TX

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

ACCEPTED AND AGREED TO BY
THE OWNER AND HOLDER OF SAID NOTE:
BANK OF AMERICA, N.A.

By: *Freda L. Clement*
Name: Freda L. Clement
Title: Vice President

Witness: *Wendy Simon*

Witness: *Jaytha Smith*

## Corporate Acknowledgement

STATE OF TEXAS
COUNTY OF DALLAS

BEFORE ME, the undersigned authority, on this day personally appeared Freda L. Clement, as Vice President of Bank of America, N.A. known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed, in the capacity therein stated, as the act and deed of said corporation.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 24th day of June, 2005.

My Commission Expires: _____

_____
Notary Public in and for
The State of Texas

Name: Tamica S. Fuller

TAMICA S. FULLER
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 11-08-07

# Exhibit "A"

Lot 16, Block 9, of BENDERS LANDING, Section 2, a subdivision in Montgomery County, Texas, according to the map or plat thereof recorded in Plat Cabinet R, Sheet 142 of the Map Records of Montgomery County, Texas.

RECORDS MEMORANDUM
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blackouts, additions and changes were present at the time the instrument was filed and recorded.

FILED FOR RECORD
2005 AUG 19 PM 4: 14

*Mark Turnbull*
COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS
COUNTY OF MONTGOMERY
I hereby certify this instrument was filed in File Number Sequence on the date and at the time stamped herein by me and was duly RECORDED in the Official Public Records of Real Property at Montgomery County, Texas.

AUG 19 2005

*Mark Turnbull*
County Clerk
Montgomery County, Texas

## EXHIBIT "A"

Lot 16, Block 9, of Benders Landing, Section 2, a sudivision in Montgomery County, Texas, according to the map or plat thereof recorded in Plat Cabinet R, Sheet 142 of the Map Records of Montgomery County, Texas